UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Jose L. Rojas, Mateo Real, Arturo Loyola, Javier Cardona, William Cabeza, Clemente Caguana, Jesus Yupa and Victor J. Gil, individually and on behalf of all employees similarly situated,

                         Plaintiff,

                 - against -

SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti,

                         Defendants.

Case No.

**COLLECTIVE & CLASS ACTION COMPLAINT**

---

Plaintiffs Jose L. Rojas, Mateo Real,  Arturo Loyola, Javier Cardona, William Cabeza, Clemente Caguana, Jesus Yupa, Victor J. Gil, (collectively "Plaintiffs"), on their own behalf and on behalf of all others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC, hereby file this complaint against Defendants SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. (the "Corporate Defendants") and Samir Hoti (the "Individual Defendant", and collectively with the Corporate Defendants, the  "Defendants"), allege and show the Court the following:

## **INTRODUCTION**

1.      This is an action brought by Plaintiffs on their own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and the New York Labor Law, arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, wages owed and overtime compensation for all hours worked over forty (40) each workweek.

3.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid overtime wages, (3) liquidated damages, (4) prejudgment and post-judgment interest; and (5) attorneys' fees and costs.

4.      Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid wages, (2) unpaid overtime compensation (3) compensation for failure to provide wage notice at the time of hiring and failure to provide paystubs in violation of the NYLL (4) liquidated damages equal to the sum of unpaid wages and overtime compensation pursuant to the NY Wage Theft Prevention Act; (5) prejudgment and post-judgment interest; and (6) attorney's fees and costs.

## JURISDICTION AND VENUE

5.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7.      Plaintiff Jose L. Rojas is a resident of Queens County and was employed as a carpenter by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

8.      Plaintiff Mateo Real is a resident of Queens County and was employed as a carpenter by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

9.      Plaintiff Arturo Loyola is a resident of New York County and was employed as a plaster and paint laborer by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

10.      Plaintiff Javier Cardona is a resident of Queens County and was employed as a foreman by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

11.      Plaintiff William Cabeza is a resident of Queens County and was employed as a construction laborer by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

12.      Plaintiff Clemente Caguana is a resident of Queens County and was employed as a plaster and paint laborer by SH General Contracting Corp., S.H. General Contracting, LLC, SH

General Construction Corp., SH GC Corp. and Samir Hoti, located at 460 East 115th Street, Ste. 3R, New York, NY 10029 .

13.     Plaintiff Jesus Yupa is a resident of Queens County and was employed as a plaster and paint laborer by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at  460 East 115th Street, Ste. 3R, New York, NY 10029 .

14.     Plaintiff Victor J. Gil is a resident of Queens County and was employed as a plaster and paint laborer by SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti, located at  460 East 115th Street, Ste. 3R, New York, NY 10029 .

### **DEFENDANTS**

15.     Defendants operate several general contracting companies that provide commercial and residential construction services throughout New York State and operate under a common trade name "SH-GC" located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

### ***SH General Contracting Corp.***

16.     Upon information and belief, Corporate Defendant, SH General Contracting Corp. owns and operates a construction company in New York County located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

17.     Upon information and belief, Corporate Defendant, SH General Contracting Corp. had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, S.H. General Contracting, LLC purchased and handled goods moved in interstate commerce.

18.     At all times relevant herein, SH General Contracting Corp. was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

19.     Upon information and belief, at all relevant times hereto, SH General Contracting Corp. employees more than ten (10) employees.

20.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by SH General Contracting Corp..

21.     At all relevant times, SH General Contracting Corp. knowingly and willfully failed to pay Plaintiffs their lawfully earned wages, overtime compensation, failed to provide wage statements, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

### *S.H. General Contracting, LLC*

22.     Upon information and belief, Corporate Defendant, S.H. General Contracting, LLC owns and operates a construction company in New York County located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

23.     Upon information and belief, Corporate Defendant, S.H. General Contracting, LLC had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, S.H. General Contracting, LLC purchased, and handled goods moved in interstate commerce.

24.     At all times relevant herein, S.H. General Contracting, LLC was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

25.     Upon information and belief, at all relevant times hereto, S.H. General Contracting, LLC employees more than ten (10) employees.

26.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by S.H. General Contracting, LLC.

27.     At all relevant times, S.H. General Contracting, LLC knowingly and willfully failed to pay Plaintiffs their lawfully earned wages, overtime compensation, failed to provide wage statements, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

### *SH General Construction Corp.*

28.     Upon information and belief, Corporate Defendant, SH General Construction Corp. owns and operates a construction company in New York County located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

29.     Upon information and belief, Corporate Defendant, SH General Construction Corp. had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, S.H. General Contracting, LLC purchased, and handled goods moved in interstate commerce.

30.     At all times relevant herein, SH General Construction Corp. was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

31.     Upon information and belief, at all relevant times hereto, SH General Construction Corp. employees more than ten (10) employees.

32.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by SH General Construction Corp..

33.     At all relevant times, SH General Construction Corp. knowingly and willfully failed to pay Plaintiffs their lawfully earned wages, overtime compensation, failed to provide wage statements, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

***SH GC Corp.***

34.     Upon information and belief, Corporate Defendant, SH GC Corp. owns and operates a construction company in New York County located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

35.     Upon information and belief, Corporate Defendant, SH GC Corp. had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, SH GC Corp. purchased, and handled goods moved in interstate commerce.

36.     At all times relevant herein, SH GC Corp. was, and continues to be, an "enterprise engaged in commerce" within the meaning of FLSA.

37.     Upon information and belief, at all relevant times hereto, SH GC Corp. employees more than ten (10) employees.

38.     At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by SH GC Corp.

39.     At all relevant times, SH GC Corp. knowingly and willfully failed to pay Plaintiffs their lawfully earned wages, overtime compensation, failed to provide wage statements, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

40.     The Corporate Defendants operate as a single integrated enterprise. Specifically, the Corporate Defendants are engaged in related activities, share common ownership and have a common business purpose:

a) the Corporate Defendants are commonly owned and operated by the Individual Defendant and by the Corporate Defendants;

b) The Corporate Defendants share the same trade name "SH-GC";

c) the Corporate Defendants have the same corporate leadership. Individual Defendants Samir Hoti is the owners and/or officers of Corporate Defendants, and oversees all aspects of management and operations for each of the Corporate Defendants;

d) the Corporate defendants maintain centralized labor relations, human resources, and payroll operations; employment policies are formulated centrally by senior officials for Corporate Defendants.

e) The Corporate Defendants interchanged supplies, equipment, and employees between the construction companies and work sites.

41.    The Individual Defendant, Samir Hoti, is the principal, owner, and or manager of each of the Corporate Defendants. Defendant Samir Hoti exercised control over the terms and conditions of the Plaintiffs. Samir Hoti exercised the power and authority to (i) fire and hire, (ii) determine rate and method of pay, (iii) determine work schedules and (iv) otherwise affect the quality of employment of Plaintiffs. At all times, employees could complain to Defendant Samir Hoti directly regarding any of the terms of their employment, and Defendant Samir Hoti would have the authority to effect any changes to the quality and terms of employee's employment, including changing their schedule, compensation, or terminating or hiring such employees. Samir Hoti also had the power and authority to supervise and control supervisors of Plaintiffs.

42.    Upon information and belief, Individual Defendant Samir Hoti participated in the day-to-day operations of each of the Corporate Defendants, and acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Corporate Defendants.

43.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

## STATEMENT OF FACTS

44.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

45.     Defendants knew that the nonpayment of wages, nonpayment of overtime compensation, failure to provide wage statements, and failure to provide the required wage notice at the time of hiring would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

### Jose L. Rojas:

46.     From in or about January 2018 to September 1, 2018, Plaintiff Jose L. Rojas ("Plaintiff Rojas") was hired by Defendants to work as a carpenter for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

47.     During his employment, Plaintiff Rojas regularly worked eight (8) hours per day and over fifty-six (56) hours per week. Specifically, Plaintiff Rojas worked seven days a week with some Sundays off. His daily schedule ran from around 7:00 am to around 3:30 pm each day from Monday through Sunday.  When projects needed expedited finishing, Plaintiff Rojas worked a night shift from around 5:00 pm to around 5:00 am. Plaintiff Rojas did have an uninterrupted 30-minute break during each of his work day, as such, Plaintiff worked approximately fifty-six (56) hours per week and up to sixty-eight (68) hours per week when working the night shift.

48.     Plaintiff Rojas worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Rojas received his compensation at a rate of $190 per day and $380 for each night shift regardless of how many hours he worked. Throughout Plaintiff

Rojas's tenure with Defendants, Plaintiff Rojas was paid weekly by check, but not provided a paystub.

49.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Rojas actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Rojas's compensation generally based on his work schedule.

50.     As of date, Plaintiff Rojas is owed approximately $2,000.00 of earned wages.  The checks Defendants provided Plaintiff Rojas as compensation were returned without funds.

51.     Defendants did not compensate Plaintiff Rojas for overtime compensation according to state and federal laws.

52.     Defendants did not provide Plaintiff Rojas with a wage notice at the time of his hiring.

53.     Defendants did not provide Plaintiff Rojas with wage statements at the time of his pay.

***Mateo Real:***

54.     From in or about July 2018 to September 1, 2018, Plaintiff Mateo Real ("Plaintiff Real") was hired by Defendants to work as a carpenter for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

55.     During his employment, Plaintiff Real regularly worked eight and one half (8.5) hours per day and over fifty-one (51) hours per week. Specifically, Plaintiff Real worked six days a week with Sundays off. His daily schedule ran from around 7:00 am to around 3:30 pm each day from Mondays through Saturday.  Plaintiff Real did have an uninterrupted 30-minute break during each of his work day, as such, Plaintiff Real worked approximately forty-eight (48) hours per week.

56.     Plaintiff Real worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Real received his compensation at a rate of $160.00 per day regardless of how many hours he worked.  Throughout Plaintiff Real's tenure with Defendants, Plaintiff Real was paid weekly by check, but not provided a paystub.

57.     As of date, Plaintiff Real is owed approximately $1,500.00 of earned wages.  The checks Defendants provided Plaintiff Real as compensation were returned without funds.

58.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Real actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Real's compensation generally based on his work schedule.

59.     Defendants did not compensate Plaintiff Real for overtime compensation according to state and federal laws.

60.     Defendants did not provide Plaintiff Real with a wage notice at the time of his hiring.

61.     Defendants did not provide Plaintiff Real with wage statements at the time of his pay.

***Arturo Loyola:***

62.     From in or about June 2018 to September 1, 2018, Plaintiff Arturo Loyola ("Plaintiff Loyola") was hired by Defendants to work as a plaster and paint laborer for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

63.     During his employment, Plaintiff Loyola regularly worked nine (9) hours per day and over forty-five (45) hours per week. Specifically, Plaintiff Loyola worked five days a week, working every other Saturday with Sunday's off. His daily schedule ran from around 7:00 am to around 4:00 pm each day from Monday through Saturday. Plaintiff Loyola did have an

uninterrupted 30-minute break during each of his work day, as such, Plaintiff Loyola worked approximately forty-two and one half (42.5) hours per week and fifty-one (51) hours per week when working on Saturday.

64.     Plaintiff Loyola worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Loyola received his compensation at a rate of $160 per day regardless of how many hours he worked. Throughout Plaintiff Loyola's tenure with Defendants, Plaintiff Loyola was paid weekly by check, but not provided a paystub.

65.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Loyola actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Loyola's compensation generally based on his work schedule.

66.     As of date, Plaintiff Loyola is owed approximately $2,000.00 of earned wages.  The checks Defendants provided Plaintiff Loyola as compensation were returned without funds.

67.     Defendants did not compensate Plaintiff Loyola for overtime compensation according to state and federal laws.

68.     Defendants did not provide Plaintiff Loyola with a wage notice at the time of his hiring.

69.     Defendants did not provide Plaintiff Loyola with a wage statement at the time of his pay.

### *Javier Cardona:*

70.     From in or about August 2016 to September 1, 2018, Plaintiff Javier Cardona ("Plaintiff Cardona") was hired by Defendants to work as a foreman for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

71.     During his employment, Plaintiff Cardona regularly worked nine (9) hours per day and over fifty-four (54) hours per week. Specifically, Plaintiff Cardona worked six days a week with Sunday's usually off. His daily schedule ran from around 7:00 am to around 4:00 pm each day from Monday through Saturday. Plaintiff Cardona did have an uninterrupted 30-minute break during each of his work day, as such, Plaintiff Cardona worked approximately fifty-one (51) hours per week and fifty-nine and one half (59.5) hours per week when working on Sundays.

72.     Plaintiff Cardona worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Cardona received his compensation at a rate of $220 per day regardless of how many hours he worked. Throughout Plaintiff Cardona's tenure with Defendants, Plaintiff Cardona was paid weekly by check, but not provided a paystub.

73.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Cardona actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Cardona's compensation generally based on his work schedule.

74.     As of date, Plaintiff Cardona is owed approximately $5,280.00 of earned wages. The checks Defendants provided Plaintiff Loyola as compensation were returned without funds.

75.     Defendants did not compensate Plaintiff Cardona for overtime compensation according to state and federal laws.

76.     Defendants did not provide Plaintiff Cardona with a wage notice at the time of his hiring.

77.     Defendants did not provide Plaintiff Cardona with wage statements at the time of his pay.

**_William Cabeza:_**

78.     From in or about October 2017 to September 1, 2018, Plaintiff William Cabeza ("Plaintiff Cabeza") was hired by Defendants to work as a construction laborer for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

79.     During his employment, Plaintiff Cabeza regularly worked nine (9) hours per day and over forty-five (45) hours per week. Specifically, Plaintiff Cabeza worked five days a week, working every other Saturday with Sunday's off. His daily schedule ran from around 7:00 am to around 4:00 pm each day from Monday through Saturday. When projects needed expedited finishing, Plaintiff Cabeza worked from 7:00 am until about 10:00 pm. Plaintiff Cabeza did have an uninterrupted 30-minute break during each of his work day, as such, Plaintiff Cabeza worked approximately forty-two and one half (42.5) hours per week, fifty-one (51) hours per week when working on Saturday, and seventy-two (72) hours when working the until 10:00 pm.

80.     Plaintiff Cabeza worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Cabeza received his compensation at a rate of $200 per day regardless of how many hours he worked. Throughout Plaintiff Loyola's tenure with Defendants, Plaintiff Loyola was paid weekly by check, but not provided a paystub.

81.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Cabeza actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Cabeza's compensation generally based on his work schedule.

82.     As of date, Plaintiff Cabeza is owed approximately $4,200.00 of earned wages.  The checks Defendants provided Plaintiff Cabeza as compensation were returned without funds.

83.     Defendants did not compensate Plaintiff Cabeza for overtime compensation according to state and federal laws.

84.    Defendants did not provide Plaintiff Cabeza with a wage notice at the time of his hiring.

85.    Defendants did not provide Plaintiff Cabeza with wage statements at the time of his pay.

### *Clemente Caguana:*

86.    From in or about May 2018 to September 1, 2018, Plaintiff Clemente Caguana ("Plaintiff Caguana") was hired by Defendants to work as a paint and plaster laborer for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

87.    During his employment, Plaintiff Caguana regularly worked eight and one half (8.5) hours per day and over forty-five (45) hours per week. Specifically, Plaintiff Caguana worked five days a week, with Saturday with Sunday's off. His daily schedule ran from around 7:00 am to around 4:00 pm each day from Monday through Friday. When projects needed expedited finishing, Plaintiff Caguana worked from 7:00 am until about 6:00 pm. Plaintiff Caguana did have an uninterrupted 30-minute break during each of his work day, as such, Plaintiff Loyola worked approximately forty-two and one half (42.5) hours per week, and fifty-two and one half (52.5) hours per week when working until 6 pm.

88.    Plaintiff Caguana worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Caguana received his compensation at a rate of $180 per day for the first two months and then raised to $190 per day.  Plaintiff Caguana received this daily compensation regardless of how many hours he worked. Throughout Plaintiff Caguana's tenure with Defendants, Plaintiff Caguana was paid weekly by check, but not provided a paystub.

89.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Rojas actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Caguana's compensation generally based on his work schedule.

90.     As of date, Plaintiff Caguana is owed approximately $6,000.00 of earned wages. The checks Defendants provided Plaintiff Caguana as compensation were returned without funds.

91.     Defendants did not compensate Plaintiff Caguana for overtime compensation according to state and federal laws.

92.     Defendants did not provide Plaintiff Caguana with a wage notice at the time of his hiring.

93.     Defendants did not provide Plaintiff Caguana with wage statements at the time of his pay.

### *Jesus Yupa:*

94.     From in or about February 2018 to July 1, 2018, Plaintiff Jesus Yupa  ("Plaintiff Yupa") was hired by Defendants to work as a paint and plaster laborer for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

95.     During his employment, Plaintiff Yupa regularly worked eight and one half (8.5) hours per day and over forty-two and one half (42.5) hours per week. Specifically, Plaintiff Yupa worked five days a week, working on Saturdays once per month and had Sunday's off. His daily schedule ran from around 7:00 am to around 3:30 pm each day from Monday through Friday and Saturday. Plaintiff Caguana did have an uninterrupted 30-minute break during each of his work day, as such, Plaintiff Loyola worked approximately forty (40) hours per week, and forty-eight (48) hours per week when working on Saturdays.

96.     Plaintiff Yupa worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Yupa received his compensation at a rate of $180 per day regardless of how many hours he worked. Throughout Plaintiff Yupa's tenure with Defendants, Plaintiff Yupa was paid weekly by check, but not provided a paystub.

97.     Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Rojas actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Yupa's compensation generally based on his work schedule.

98.     As of date, Plaintiff Yupa is owed approximately $3,600.00 of earned wages.  The checks Defendants provided Plaintiff Yupa as compensation were returned without funds.

99.     Defendants did not compensate Plaintiff Yupa for overtime compensation according to state and federal laws.

100.    Defendants did not provide Plaintiff Yupa with a wage notice at the time of his hiring.

101.    Defendants did not provide Plaintiff Yupa with wage statements at the time of his pay.

### *Victor J. Gil:*

102.    From in or about March 2018 to August 1, 2018, Plaintiff Victor J. Gil ("Plaintiff Gil") was hired by Defendants to work as a paint and plaster laborer for Defendants' construction company located at 460 East 115th Street, Ste. 3R, New York, NY 10029.

103.    During his employment, Plaintiff Gil regularly worked nine (9) hours per day and over fifty-four (54) hours per week. Specifically, Plaintiff Gil worked six days a week with Sundays usually off. His daily schedule ran from around 7:00 am to around 4:00 pm each day from Monday through Saturday. Plaintiff Gil did have an uninterrupted 30-minute break during each of

his work day, as such, Plaintiff Gil worked approximately fifty-one (51) hours per week and fifty-nine and one half (59.5) hours per week when working on Sundays.

104.    Plaintiff Gil worked the above work schedule throughout the duration of his employment with Defendants. Plaintiff Gil received his compensation at a rate of $180 per day regardless of how many hours he worked. Throughout Plaintiff Gil's tenure with Defendants, Plaintiff Gil was paid weekly by check, but not provided a paystub.

105.    Defendants attempted to implement a means via written time sheets to track the number of hours Plaintiff Gil actually worked, but it was not accurately maintained, instead, Defendants calculated Plaintiff Gil's compensation generally based on his work schedule.

106.    As of date, Plaintiff Gil is owed approximately $5,500.00 of earned wages.  The checks Defendants provided Plaintiff Gil as compensation were returned without funds.

107.    Defendants did not compensate Plaintiff Gil for overtime compensation according to state and federal laws.

108.    Defendants did not provide Plaintiff Gil with a wage notice at the time of his hiring.

109.    Defendants did not provide Plaintiff Gil with wage statements at the time of his pay.

110.    Defendants committed the following alleged acts knowingly, intentionally and willfully.

111.    Defendants knew that the nonpayment of wages, overtime compensation, and the "spread of hours" premium would economically injure Plaintiffs and the Class Members by their violation of federal and state laws.

112.    While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.

113.    Plaintiffs and the New York Class Members' workdays frequently lasted longer than 10 hours.

114.    Defendants did not pay other Class members' New York's "spread of hours" premium for every day in which they worked over 10 hours.

115.    Defendants did not provide Plaintiffs and other Class members with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay. These notices were similarly not provided upon Plaintiffs' and other Class members' pay increase(s).

116.    Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

117.    Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

118.    Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their construction company location for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom failed to receive earned wages and overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), and have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, in contravention to federal and state labor laws.

119.    Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than ten (10) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

120.    Plaintiffs will fairly and adequately protect the interests of the Collective Action Members and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interest that are contrary to or in conflict with those members of this collective action.

121.    This action should be certified as collective action because the prosecution of separate actions by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

122.    A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the

members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

123.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiff and other Collective Action Members are:

a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

b. Whether the Defendants failed to pay the Collective Action Members wages and overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

c. Whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

d. Whether the Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA; and,

e. Whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

124.    Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

125.    Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

## CLASS ACTION ALLEGATIONS

126.    Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at their construction company location doing business as SH General Contracting Corp., S.H. General Contracting, LLC, SH General Construction Corp. on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

127.    All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

128.    The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than ten (30) members of the class.

129.    Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.  All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay wages and overtime compensation. Defendants' corporation wide policies and practices, including but not limited to their  failure  to provide a wage notice at the time of hiring, affected all Class members similarly,

22

and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

130.    Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage and hour employment litigation cases.

131.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,  and  without  the unnecessary  duplication  of  efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them.  Further, important public interests will be served by addressing the matter as a class action.  The  adjudication  of  individual  litigation  claims would result in a great expenditure of Court  and  public  resources;  however,  treating  the  claims  as  a  class action would result in a significant saving of these costs.   The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class  members'  rights  and  the

disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

132.     Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

133.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendants employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Plaintiffs and Class members are entitled to wages and overtime compensation under the New York Labor Law;

c. Whether the Defendants provided wage notices at the time of hiring to Plaintiffs and class members as required by the NYLL;

d. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work.

**COUNT I**
**[Violations of the Fair Labor Standards Act—Overtime Wage**
**Brought on behalf of the Plaintiffs and the FLSA Collective]**

134.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

135.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which she or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

136.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

137.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

138.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

139.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

140.     Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

141.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

### COUNT II
### [Violation of New York Labor Law—Overtime Pay
### Brought on behalf of Plaintiffs and the Rule 23 Class]

142.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

143.     Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

144.     Defendants' failure to pay Plaintiffs and the Rule 23 Class their overtime pay violated the NYLL.

145.     Defendants' failure to pay Plaintiffs and the Rule 23 Class was not in good faith.

### COUNT III
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement]

146.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

147.     The NYLL and supporting regulations require employers to provide written notice

of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

148.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on her or her first day of employment.

149.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to each Plaintiff even after the fact.

150.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT IV
### [Violation of New York Labor Law—New York Pay Stub Requirement]

151.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

152.    The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

153.    Defendants have failed to make a good faith effort to comply with the New York

Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff's payday.

154.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT V
## [Violations of the New York Labor Law §§ 190 & 191]

155.    Plaintiffs repeat the preceding allegations and incorporate the same herein as if set forth in detail.

156.    By failing and refusing to pay Plaintiffs the compensation they are owed for the worked they performed, Defendants are liable to Plaintiffs under §§ 190 and 191 of the New York Labor Law for such unpaid compensation in an amount to be proven at trial plus applicable interest and costs, and for their reasonable attorney's fees pursuant to NYLL §198(1-a).

157.    Because the Defendants have acted without a good faith basis for believing that their acts and omissions were in compliance with the law, they are liable to Plaintiffs for an additional amount of liquidated damages equal to one hundred percent of the unpaid wages they owned Plaintiffs pursuant to NYLL §198(1-a).

## **Prayer for Relief**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective Plaintiffs and rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a) Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed

by defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)  Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)  Certification of this case as a collective action pursuant to FLSA;

e)  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

f)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)  An injunction against SH General Contracting Corp., S.H. General Contracting, LLC, and SH General Construction Corp. its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)  An award of unpaid wages due under FLSA and New York Labor Law;

i) An award of unpaid overtime wages due under FLSA and New York Labor Law;

j) An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

k) An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

l) An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay wages and overtime compensation pursuant to New York Labor Law;

m) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n) The cost and disbursements of this action;

o) An award of prejudgment and post-judgment fees;

p) Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

q) Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: November 6, 2018
     Flushing, New York

HANG & ASSOCIATES, PLLC

_/s/ Lorena P. Duarte_____
Lorena P. Duarte, Esq.
136-20 38th Avenue, Suite 10G
Flushing, New York, 11354
Tel: (718) 353-8588
Dir: (718) 353-8522
lduarte@hanglaw.com
*Attorneys for Plaintiffs*

# EXHIBIT I

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by SH- General Contracting Corp.
and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by
the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

### *SPANISH TRANSLATION:*

## CONSENTIMIENTO PARA DEMANDAR BAJO
## LEY DE NORMAS LABORALES FEDERALES

Soy un empleado actualmente o fui empleado anteriormente por  SH- General
Contracting Corp.    y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no
pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de
Tarifas firmados por el demandante nombrado en este caso.

Jose Leonardo Rojas
Full Legal Name (Print)

Signature

10/9/18
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by SH- General Contracting Corp. and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*SPANISH TRANSLATION:*

**CONSENTIMIENTO PARA DEMANDAR BAJO**
**LEY DE NORMAS LABORALES FEDERALES**

Soy un empleado actualmente o fui empleado anteriormente por SH- General Contracting Corp.   y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de Tarifas firmados por el demandante nombrado en este caso.

Mateo Real
Full Legal Name (Print)

Mateo R.
Signature

10/08/2018
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by SH- General Contracting Corp.
and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by
the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

### *SPANISH TRANSLATION:*

## CONSENTIMIENTO PARA DEMANDAR BAJO
## LEY DE NORMAS LABORALES FEDERALES

Soy un empleado actualmente o fui empleado anteriormente por  SH- General
Contracting Corp.   y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no
pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de
Tarifas firmados por el demandante nombrado en este caso.

Arturo Loyola
Full Legal Name (Print)

x Arturo Loyola
Signature

10/9/18
Date

## **CONSENT TO SUE UNDER**
## **FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by SH- General Contracting Corp.
and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by
the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

### *SPANISH TRANSLATION:*

## **CONSENTIMIENTO PARA DEMANDAR BAJO**
## **LEY DE NORMAS LABORALES FEDERALES**

Soy un empleado actualmente o fui empleado anteriormente por  SH- General
Contracting Corp.   y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no
pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de
Tarifas firmados por el demandante nombrado en este caso.

Javier Cardona.
Full Legal Name (Print)

Signature

10/17/18
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by SH- General Contracting Corp.
and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by
the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

### *SPANISH TRANSLATION:*

### CONSENTIMIENTO PARA DEMANDAR BAJO
### LEY DE NORMAS LABORALES FEDERALES

Soy un empleado actualmente o fui empleado anteriormente por  SH- General
Contracting Corp.  y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no
pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de
Tarifas firmados por el demandante nombrado en este caso.

William Cabeza
Full Legal Name (Print)

Signature

10-3-18
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by SH- General Contracting Corp.
and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by
the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

### *SPANISH TRANSLATION:*

**CONSENTIMIENTO PARA DEMANDAR BAJO**
**LEY DE NORMAS LABORALES FEDERALES**

Soy un empleado actualmente o fui empleado anteriormente por  SH- General
Contracting Corp.   y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no
pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de
Tarifas firmados por el demandante nombrado en este caso.

Clemente Caguana.
Full Legal Name (Print)

Signature

10/18/11
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Chico's Construction and/or related entities.

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

### *SPANISH TRANSLATION:*

## CONSENTIMIENTO PARA DEMANDAR BAJO
## LEY DE NORMAS LABORALES FEDERALES

Soy un empleado actualmente o fui empleado anteriormente por Chico's Construction y/o entidades relacionadas.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de Tarifas firmados por el demandante nombrado en este caso.

JESUS Yupa
Full Legal Name (Print)

Signature

10/19/18
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Chico's Construction and/or
related entities. ~~SH - General Contracting Corp~~

I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by
the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*SPANISH TRANSLATION:*

**CONSENTIMIENTO PARA DEMANDAR BAJO**
**LEY DE NORMAS LABORALES FEDERALES**

Soy un empleado actualmente o fui empleado anteriormente por Chico's Construction
y/o entidades relacionadas. SH - General
Contracting Corp.

Doy mi consentimiento para ser demandante en una acción para cobrar los salarios no
pagados. Estoy de acuerdo en que estoy obligado por los términos del Retención Contingente de
Tarifas firmados por el demandante nombrado en este caso.

Victor Julio Gil
Full Legal Name (Print)

Signature

10/9/18
Date