UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__10/25/19___
```

------------------------------------------------------------X
                        :

JOSE L. ROJAS, *individually and on*     :    18 Civ. 10253 (VSB) (RWL)
*behalf of all employees similarly situated*  :
                        :

            Plaintiff(s),    :    **REPORT AND RECOMMENDATION**
                        :    **TO THE HONORABLE VERNON S.**
      - against -        :    **BRODERICK: INQUEST DAMAGES**
                        :

SH GENERAL CONTRACTING CORP.  :
et al.,                      :

            Defendants.    :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiffs Mateo Real, Arturo Loyola, Javier Cardona, William Cabeza, Clemente Caguana, Jesus Yupa, Victor J. Gil, Wilfredo Guillen, German T. Jimenez, and Sergio De La Cruz (collectively, "Plaintiffs") seek compensatory damages, liquidated damages, statutory penalties, costs, and attorneys' fees from Defendants SH General Construction Corp., S.H. General Contracting LLC, SH GC Corp., and Samir Hoti (collectively "Defendants") for violations of the Fair Labor Standards Act (the "FLSA") and New York Labor Law (the "NYLL"). Defendants defaulted on the issue of liability, and the matter has been referred to the undersigned for an inquest on Plaintiffs' damages.

Following a review of Plaintiffs' submissions and the record in this matter, I recommend awarding Plaintiffs' damages in the amount of $316,395.04 in unpaid overtime wages and statutory damages; $15,630.00 in attorneys' fees; and $884.00 in costs and disbursements, for a total award of $332,909.04. Additionally, I recommend an award of pre-judgment interest at a rate of 9% calculated from November 6, 2018 through the date of final judgment in a sum to be calculated by the Clerk of Court.

1

**Procedural Background**

The Complaint was filed on November 6, 2018 on behalf of eight initial Plaintiffs against five initial Defendants.[1]  The initial Defendants were: SH General Construction Corp., S.H. General Contracting LLC, SH GC Corp., SH General Contracting Corp, and Samir Hoti.  (Dkt. 1.)  On December 10, 2018, Plaintiffs filed affidavits of service showing service of the action upon Defendants SH General Construction Corp., S.H. General Contracting LLC, and SH GC Corp.  (Dkt. 9-11.)  No affidavits of service were filed for Defendants SH General Contracting Corp. and Samir Hoti.  On February 20, 2019, Judge Broderick entered an Order directing, in part, that Plaintiffs seek default judgement against the four served Defendants and also take steps to serve the two as-yet unserved Defendants.  (Dkt. 13.)  Service was made on Samir Hoti and the affidavit of service was filed on March 14, 2019.  (Dkt. 14.)  Plaintiffs discontinued the action against SH General Contracting Corp. on March 15, 2019.  (Dkt. 27.)

On March 30, 2019, Plaintiffs sought default judgment against the four served Defendants: S.H. General Contracting, LLC, SH General Construction Corp., SH GC Corp. and Samir Hoti.  (Dkt. 30-32.)  Judge Broderick issued an Order to Show Cause on April 3, 2019, directing those four Defendants to show cause why default judgment should

---

[1] Initially, the Complaint was filed on behalf of eight named Plaintiffs.  Four additional plaintiffs then filed FLSA Consent to Sue letters over the course of December 2018, bringing the total number of Plaintiffs to twelve.  (Dkt. 6, 7, 8, 12.)  In support of the inquest, Plaintiffs' counsel submitted a signed affidavit from each Plaintiff, except for two, attesting to their hours and pay.  (*See* Dkt. 44, 45.)  The two exceptions are Jose J. Rojas and Jose Emilio Rojas Bernal, a father and son.  According to Plaintiffs' counsel those two plaintiffs stopped communicating with counsel in July 2019.  (Dkt. 48 at ¶ 9.)  As of the date of this Report and Recommendation, neither the father nor son have submitted a signed affidavit.  Accordingly, this inquest proceeding will include only ten Plaintiffs: Mateo Real, Arturo Loyola, Javier Cardona, William Cabeza, Clemente Caguana, Jesus Yupa, Victor J. Gil, Wilfredo Guillen, German T. Jimenez, and Sergio De La Cruz.

not be entered against them.  (Dkt. 33.)  A show cause hearing was held on May 24, 2019, but no Defendants (or counsel for Defendants) appeared.  Accordingly, on May 28, 2019, Judge Broderick entered default judgment against Defendants SH General Construction Corp., S.H. General Contracting LLC, SH GC Corp., and Samir Hoti on the issue of liability.  (Dkt. 37.)  On the same date, he referred the matter to the undersigned for an inquest on damages and attorneys' fees. (Dkt. 38.)

On May 29, 2019, the undersigned entered a Scheduling Order for Damages Inquest.  (Dkt. 39.)  The Scheduling Order required Plaintiffs to submit their supporting papers for their damages by June 30, 2019 and serve the corporate Defendants with all such papers through the New York Secretary of State and personally serve the individual Defendant, Samir Hoti.  (*Id.* at 3.)  Defendants were required to submit any response to Plaintiffs' submissions by July 15, 2019. (*Id.* at 2.)

Plaintiffs filed their application in support of their damage calculation on June 28, 2019.  (Dkt. 44.)  The Clerk's Office, as well as this Court, noticed deficiencies in the form of their filings, and directed that Plaintiffs refile their submissions.  (Dkt. 45.)  They did so on August 23, 2019.  Those revised filings, which the Court will use as the basis for this inquest, along with affidavits of the individual Plaintiffs submitted with the June 28, 2019 filing, include the Affidavit of Jiajing Fan in Support of Plaintiffs' Application for Damages ("Fan. Aff.") (Dkt. 48), including Exhibits 1-10 as well as Plaintiffs' Proposed Findings of Fact ("FF") (Dkt. 48-11) and Plaintiffs' Proposed Conclusions of Law (Dkt. 48-12). Plaintiffs also filed a Statement of Damages with Exhibits 1-3.  (Dkt. 49.)  The Statement

of Damages indicates that Plaintiffs are entitled to judgment in the total amount of $344,668.[2]  Defendants have not filed a response to Plaintiffs' submissions.

The Court finds the submissions more than adequate to determine damages and therefore did not hold a separate hearing.[3]

## Factual Background

Because liability has already been adjudicated, the Court will only briefly recount the factual background of the matter.[4]

Plaintiffs worked for Defendants in a variety of construction positions including carpenters, painters, plasterers, and general laborers from approximately August 2016 through November 2018. (FF ¶ 1; Complaint ¶¶ 54, 62, 70, 78, 86, 94, 102.)  The three corporate Defendants operate several general contracting companies that provide

---

[2] This sum is comprised of: $104,203 (principal amount sued for), $104,203 (liquidated damages), $100,000 (statutory damages), $15,630 (attorneys' fees), $400 (Clerk's fee), $484 (process server's fee), and interest at a statutory rate of 9% from January 1, 2017 through March 15, 2019. (Dkt. 49.)  For reasons the Court will explain later in this Report and Recommendation, Plaintiffs' August 23, 2019 submissions included certain inaccuracies and contradictions that result in a reduction in the amount of unpaid overtime wages and liquidated damages to which they are entitled.

[3] To assess whether the plaintiff has articulated a sufficient basis for damages, a court has the discretion (but is not required) to hold a hearing to determine the amount of damages that should be awarded on a default. *See* Fed. R. Civ. P. 55(b)(2); *Fustok v. ContiCommodity Services., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989).

[4] The factual background is drawn from Plaintiffs' Proposed Findings of Fact, which in turn cite to paragraphs in the Complaint (Dkt. 48-11), as well as from the affidavits of the three Plaintiffs who joined after filing consents to sue subsequent to the Complaint.  As the Court will address below, where, as here, a defendant has defaulted on liability, all the facts alleged in the complaint must be accepted as true except those relating to the amount of damages. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The asserted facts as to damages are supported by the affidavits submitted from each of the individual Plaintiffs and which are cited in the Proposed Findings of Facts.  (*See* Dkt. 44 at Ex. 1-12 and Dkt. 48 at Ex. 1-12.)

commercial and residential construction services throughout New York State, and operate as a single integrated enterprise.  (FF ¶¶ 2-3; Complaint ¶¶ 15, 40.)  The individual Defendant, Samir Hoti, is the principal, owner and manager of each of the three corporate Defendants and exercised control over the terms and conditions of Plaintiffs' employment.  (FF ¶ 4; Complaint ¶ 41.)  Plaintiffs' submissions in support of their damages claim describe the work hours and payment of each of the ten Plaintiffs as follows:

1. **Mateo Real** ("Plaintiff Real") was employed as a carpenter by Defendants from approximately July 2018 to September 1, 2018.  During this time, Plaintiff Real worked six days per week, with Sundays off, from 7:00 a.m. to 3:30 p.m. with a 30-minute break daily and worked approximately 51 hours per week.  (FF ¶ 5; Complaint ¶ 56.)  Throughout Plaintiff Real's employment with Defendants, he was paid $160 per day by check, regardless of how many hours he worked.  Plaintiff Real is owed approximately $1,500.00 of earned wages.  The checks Defendants provided Plaintiff Real as compensation were returned without funds.  (FF ¶ 6; Complaint ¶ 56.)

2. **Arturo Loyola** ("Plaintiff Loyola") was employed as a plaster and paint laborer by Defendants from approximately June 2018 to September 1, 2018.  During this time, Plaintiff Loyola worked five days per week, with every other Saturday and Sundays off, from 7:00 a.m. to 4:00 p.m. with a 30-minute break daily and worked approximately 42.5 hours per week and 51 hours per week when working on a Saturday."  (FF ¶ 7; Complaint ¶ 63) Throughout Plaintiff Loyola's employment with Defendants, he was paid $160 per day regardless of how many hours he worked.

(FF ¶ 8; Complaint ¶ 64.)  Defendants paid Plaintiff Loyola by check, but the checks were often returned without funds.   Defendants currently owe Plaintiff Loyola approximately $2,000 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 9; Complaint ¶ 66.)

3. **Javier Cardona** ("Plaintiff Cardona") was employed as a foreman by Defendants from approximately August 2016 to September 1, 2018.  During this time, Plaintiff Cardona worked six days per week, with Sundays usually off, from 7:00 a.m. to 4:00 p.m. with a 30-minute break daily and worked approximately 51 hours per week and 59.5 hours per week when working on Sunday.  (FF ¶ 10; Complaint ¶ 71)  Throughout Plaintiff Cardona's employment with Defendants, he was paid $220 per day regardless of how many hours he worked.  (FF ¶ 11; Complaint ¶ 72)  Defendants paid Plaintiff Cabeza by check, but the checks were often returned without funds.   Plaintiff Cardona is owed approximately $5,280.00 of earned wages.  The checks Defendants provided Plaintiff as compensation were returned without funds." (FF ¶ 12; Complaint ¶ 74.)

4. **William Cabeza** ("Plaintiff Cabeza") was employed as a construction laborer by Defendants from approximately October 2017 to September 1, 2018.  During this time, Plaintiff Cabeza worked five days per week, with an occasional Saturdays and Sundays off, from 7:00 a.m. to 4:00 p.m. with a 30-minute break daily and worked approximately 42 hours per week, 51 hours per week when working on Saturday.  (FF ¶ 13; Complaint ¶ 79.)  Throughout Plaintiff Cabeza's employment with Defendants, he was paid $220 per day regardless of how many hours he worked.   (FF ¶ 14; Complaint ¶ 80.)   Plaintiff Cabeza is owed approximately

$4,200.00 of earned wages.  The checks Defendants provided Plaintiff Cabeza as compensation were returned without funds. (FF ¶ 15; Complaint ¶ 82.)

5. **Clemente Caguana** ("Plaintiff Caguana") was employed as a painter and plaster laborer by Defendants from approximately May 2018 to September 1, 2018. During this time, Plaintiff Caguana worked five days per week, with Saturday and Sunday off, from 7:00 a.m. to 4:00 p.m. with a 30-minute break daily and worked approximately 42.5 hours per week.  When projects needed expedited finishing, Plaintiff Caguana worked from around 7:00 a.m. until about 6:00 p.m. and worked 52.5 hours per week when working 7:00 a.m. to 6:00 p.m.  (FF ¶ 16; Complaint ¶ 87)  Throughout Plaintiff Caguana's employment with Defendants, he was paid $180 per day for the first two months and then raised to $190 per day, regardless how many hours he worked.  (FF ¶ 17; Complaint ¶ 88)  Defendants paid Plaintiff Caguana by check, but the checks were often returned without funds.  Defendants currently owe Plaintiff Caguana approximately $6,000.00 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 18; Complaint ¶ 90.)

6. **Jesus Yupa** ("Plaintiff Yupa") was employed as a painter and plaster laborer by Defendants from approximately February 2018 to July 1, 2018.  During this time, he worked five days per week, including one Saturday per month with Sundays off, from 7:00 a.m. to 3:30 p.m. with a 30-minute break daily and worked approximately 40 hours per week, and 48 hours per week when working on Saturday.  (FF ¶ 19; Complaint ¶¶ 94, 95.)  Throughout Plaintiff Yupa's employment with Defendants, he was paid $180 per day regardless of how many hours he worked.  (FF ¶ 20; Complaint ¶ 96.)  Defendants paid Plaintiff Yupa by check, but the checks were

often returned without funds.   Defendants currently owe Plaintiff Yupa approximately $3,600.00 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 21; Complaint ¶ 98.)

7. **Victor J. Gil** ("Plaintiff Gil") was employed as a painter and plaster laborer by Defendants from approximately March 2018 to August 1, 2018.  During this time, he worked six days per week, with Sundays usually off, from 7:00 a.m. to 4:00 p.m. with a 30-minute break daily and worked approximately 51 hours per week and 59.5 hours per week when working on Sunday.  (FF ¶ 22; Complaint ¶ 103) Throughout Plaintiff Gil's employment with Defendants, he was paid $180 per day regardless of how many hours he worked.  (FF ¶ 23; Complaint ¶ 104.)  Defendants paid Plaintiff Gil by check, but the checks were often returned without funds. Defendants currently owe Plaintiff Gil approximately $5,500.00 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 24; Complaint ¶ 105.)

8. **Wilfredo Guillen** ("Plaintiff Guillen") was employed as a general laborer by Defendants from approximately September 2016 to November 9, 2018.  During this time, he worked six days per week, with occasional Sunday, from 7:00 a.m. to 6:00 p.m. with a 30-minute break daily and worked approximately 57 hours per week.  (FF ¶ 25; Affidavit of Wilfredo Guillen ("Guillen Aff.") ¶ 3, attached as Fan Aff., Ex. 3.)  Throughout Plaintiff Guillen's employment with Defendants, he was paid $135 per day and was steadily raised to $220 per day regardless of how many hours he worked.  (FF ¶ 26; Fan Aff., Ex. 3 Guillen Aff. ¶ 4-7.)  Defendants paid Plaintiff Guillen by check, but the checks were often returned without funds.

Defendants currently owe Plaintiff Guillen approximately $12,000.00 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 27; Guillen Aff. ¶12.)

9. **German T. Jimenez** ("Plaintiff Jimenez") was employed as a carpenter by Defendants from approximately January 2018 to September 1, 2018.  During that time, Plaintiff Jimenez worked six days per week, with Sundays off, from 7:00 a.m. to 3:00 p.m. with a 30-minute break daily and worked approximately 55 hours per week.  (FF ¶ 28; Affidavit of German T. Jimenez ("Jiminez Aff.") ¶ 3, attached as Fan Aff., Ex. 4.)  Throughout Plaintiff Jimenez's employment with Defendants, he was paid $250 per day regardless of how many hours he worked.  (FF ¶ 29; Jimenez Aff. ¶ 4.)   Defendants paid Plaintiff Jimenez by check, but the checks were often returned without funds.  Defendants currently owe Plaintiff Jimenez approximately $5,884.00 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 30; Jimenez Aff. ¶10.)

10. **Sergio De La Cruz** ("Plaintiff De La Cruz") was employed as a plaster laborer by Defendants from approximately August 2018 to September 24, 2018.  During that time, Plaintiff De La Cruz worked seven days per week, with an occasional Sunday off, from 7:00 a.m. to 3:30 p.m. with a 30-minute break daily and worked approximately 48 hours per week.  (FF ¶ 31; Sergio De La Cruz Affidavit ("De La Cruz Aff.") ¶ 3, attached as Fan Aff., Ex. 5.)  Throughout Plaintiff De La Cruz's employment, he was paid $200 per day regardless of how many hours he worked.  (FF ¶ 32; De La Cruz Aff. ¶ 4).  Defendants paid Plaintiff De La Cruz by check, but the checks were often returned without funds.  Defendants currently owe Plaintiff

De La Cruz approximately $2,600.00 of earned wages that resulted from bounced checks provided by Defendants.  (FF ¶ 33; De La Cruz Aff. ¶10.)

Plaintiffs maintain that, as demonstrated by the foregoing pay and hours, Defendants did not pay Plaintiffs minimum wage and did not pay for overtime. Additionally, Defendants failed to provide Plaintiffs with written notices and written statements containing their rate of pay and other disclosures as required by the NYLL. (FF ¶ 36; Complaint ¶¶ 53, 60, 61, 64, 68, 72, 76, 77, 80, 84, 85, 88, 92, 93, 96, 100, 101, 104, 109, 109; Guillen Aff. ¶¶ 8,10; Jimenez Aff. ¶¶ 5,8; De La Cruz Aff. ¶¶ 5,8.)

Plaintiffs further allege that Defendants' actions were knowing, intentional and willful.  (FF ¶ 37; Complaint ¶¶ 44, 110).  Plaintiffs allege that Defendants knew that the nonpayment of overtime wages and the spread-of-hours premium would economically injure Plaintiffs in violation of federal and state law.  (FF ¶ 38; Complaint ¶ 111).  While employed by Defendants, Plaintiffs were not exempt under federal and state laws requiring employers to pay employees overtime.  (FF ¶ 39; Complaint ¶ 112).  Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and NYLL and the supporting federal and New York State Department of Labor Regulations. (FF ¶ 40; Complaint ¶ 117).

## Analysis

In the following sections, the Court discusses the relevant legal principles and damages elements.  In Section J, the Court calculates the damages owed to each of the ten Plaintiffs.

### A.    Default Judgment

When a defendant defaults, all the facts alleged in the complaint, except those relating to the amount of damages, must be accepted as true.  *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (trial court is required to "accept all of [the plaintiff's] factual allegations as true and draw all reasonable inferences in its favor."); *Keystone Global LLC v. Auto Essentials, Inc.*, No. 12 Civ. 9077, 2015 WL 224359, at *3 (S.D.N.Y. Jan. 16, 2015) (same).  The court may also rely on factual allegations pertaining to liability contained in affidavits and declarations submitted by the plaintiffs.  *See, e.g.*, *Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 54 (2d Cir. 1993); *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  Nonetheless, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed."  *Shld, LLC v. Hall*, No. 15 Civ. 6225, 2017 WL 1428864, at *3 (S.D.N.Y. April 20, 2017); *Finkel*, 577 F.3d at 84.

Once liability has been established, a plaintiff must provide evidence establishing the amount of damages with reasonable certainty.  *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (in an inquest following a default, "a plaintiff must . . . substantiate a claim with evidence to prove the extent of damages").  Where, as here, the employer has defaulted, a court should presume the employee's recollection of hours to be correct.  *See, e.g.*, *Tho Dinh Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir.

2002) (The "employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.") (*quoting Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1940), overruled on other grounds by *Slayton v. American Express Co.*, 460 F.3d 215, 226 (2d Cir. 2006); *Cao v. Chandara Corp.*, No. 00 Civ. 8057, 2001 WL 34366628, at *5 (S.D.N.Y. July 25, 2001) (plaintiff's recollection and estimate of hours worked were presumed to be correct where defendant employer defaulted).

### B.   Prerequisites for Coverage Under FLSA and NYLL

Under the FLSA, covered non-exempt workers engaged in commerce or in the production of goods for commerce, or who are employed by an enterprise engaged in commerce or in the production of goods for commerce, are entitled to a federal minimum wage of not less than $7.25 per hour. *See* 29 U.S.C. § 206(a)(1)(C). "Whether an individual qualifies as an employer is substantially similar under the FLSA and NYLL, and courts commonly apply FLSA case law in deciding cases under both statutes." *Yu Ling Shen v. Xue Mei Chen*, No. 17 Civ. 1556, 2018 WL 2122819, at *3 (S.D.N.Y. May 8, 2018)

The FLSA defines "commerce" to mean "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  It provides that an "employee shall be deemed to have engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any closely related process or occupation directly essential to the production thereof, in any State."  29 U.S.C. § 203(j).

12

An entity constitutes an enterprise where "the related activities performed (either through unified operation or common control) by any person or persons [are] for a common business purpose."  29 U.S.C. § 203(r); *see also Herman v. RSR Security Services Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("[T]he overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case.") (internal citation omitted)); *Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of "employer" under the [NYLL] coextensively with the definition used by the FLSA.'" (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)).  An enterprise is "engaged in commerce or in the production of goods for commerce" if, 1) it "has employees engaged in commerce or in the production of goods for commerce" or "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" *and* (2) its "annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  29 U.S.C. § 203(s)(l)(A)(i)-(ii).

The FLSA and NYLL generally require employers to pay certain minimum wages as well as a premium overtime rate to employees who work more than 40 hours in a workweek.[5]  29 U.S.C. § 207(a)(1); NYLL § 160; 12 N.Y. C.R.R. § 142-2.2.  Specifically, employers must pay employees at least one-and-one-half times their regular rate of pay for each hour worked in excess of 40 in a week.  29 U.S.C. § 207(a)(1); 12 N.Y. C.R.R. §

---

[5] The FLSA enumerates certain categories of employees who are "exempt" from the overtime and minimum wage requirements.  29 U.S.C. § 213.  Because none of those exemptions apply here, the Court will not discuss them.

142-2.2.  An employer who fails to pay in accordance with the FLSA is "liable to the employee in the amount of their unpaid minimum wages, or their unpaid overtime compensation and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b); *see also Jacobs v. New York Foundling Hospital,* 577 F.3d 93, 96 (2d Cir.2009) (per curiam).

Here, taking the allegations in the Complaint as true, Defendants fall within the scope of the FLSA. The Complaint alleges that Defendants engaged in interstate commerce and had annual gross business above $500,000.  (*See generally* Complaint ¶¶ 15-43.)  It further alleges that Defendants had control over employment practices at the restaurant. (*Id.*)  Defendants are therefore an "enterprise engaged in commerce" under the FLSA and qualify as an "employer" under both the FLSA and the NYLL.

## C.  Statute of Limitations

The statute of limitations is six years for claims under the NYLL, and three years for claims under the FLSA if a defendant's acts are willful (and two years if they are not). 29 U.S.C. § 255(a); NYLL § 663(3); *Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777, 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012).

Here, the Complaint pleaded willfulness, and each Plaintiff has similarly alleged that Defendants' violations were willful.  As found above, all Plaintiffs worked for Defendants between (at the earliest) August 2016 (Complaint ¶ 70) and September 2018. (Complaint ¶ 54.)   The lawsuit was filed on November 6, 2018.  Therefore, Plaintiffs claims are timely and they may recover under the FLSA and NYLL for all alleged violations.

**D.     Unpaid Minimum Wage**

Plaintiffs are entitled to recover their unpaid wages. State and federal law both mandate that employees be paid at least a minimum hourly rate.  29 U.S.C. § 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 ("12 NYCRR"), § 146-1.2.  "The federal minimum wage does not preempt the state minimum wage, . . . and a plaintiff may recover under whatever statute provides the highest measure of damages."  *Wicaksono v. XYZ 48 Corp.*, No. 10 Civ. 3635, 2022644, at \*3 (S.D.N.Y. May 2, 2011), report and recommendation adopted, 2011 WL 2038973, at \*1 (S.D.N.Y. May 24, 2011).  All Plaintiffs allege that they were paid less than the required minimum wage.  (*See* Complaint ¶¶ 57, 66, 74, 82, 90, 98, 106; *see also* Guillen Aff. ¶12, Jimenez Aff. ¶ 4, De La Cruz Aff. ¶ 4.) Accordingly, they are eligible for recovery under both the FLSA and NYLL.[6]

Although Defendants have defaulted with respect to claims under both statutes, Plaintiffs are only entitled to damages under one statute.  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) ("[A]n employee 'may not receive a "double recovery" of back wages under both the FLSA and they NYLL") (quoting *Hernandez v. Jrpac Inc.*, No. 14 Civ. 4176, 2016 WL 3248493, at \*31 (S.D.N.Y. June 9, 2016)).  The

---

[6] All Plaintiffs allege that they worked hours that make them entitled to an unpaid spread-of-hours premium. The spread-of-hours provision in the New York regulations requires an additional hour's pay at the "basic minimum hourly wage rate" for any day where the employee works in excess of ten hours.  12 NYCRR § 142-2.4.  Before January 1, 2011, section 142-2.4(a) only required spread-of-hours wages for employees who were paid at the minimum wage.  *See Espinosa v. Delgado Travel Agency, Inc.*, No. 05 Civ. 6917, 2007 WL 656271, at \*2 (S.D.N.Y. March 2, 2007).  Upon inspection of Plaintiffs' submissions and affidavits, it does not appear that any of them worked over ten hours in a given day. (*See* Complaint ¶¶ 56, 65, 73, 81, 89, 97, 105; *see also* Guillen Aff. ¶ 11, Jimenez Aff. ¶ 3, De La Cruz Aff. ¶ 3.) Accordingly, the Court does not find that this type of NYLL damages applies to Plaintiffs. Indeed, even though it is alleged in the Complaint, this form of damages is not included on Plaintiffs' damage calculations, so they appear to concede this point. (*See* Dkt. 31-19.)

15

Court has discretion to award Plaintiffs damages under "the statute providing the greatest amount of relief." *Id.* As New York's minimum wage was higher than the federal minimum wage during the relevant period, "Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA." *Hernandez*, 2016 WL 3248493, at *31. Therefore, the Court will calculate Plaintiffs' recovery based on the difference between the wages Plaintiffs received and the New York State minimum wage in effect at the time. "Under both the FLSA and NYLL ... there is a presumption that such a weekly salary covers only the first forty hours" of work per week. *Guallpa v. N.Y. Pro Signs Inc.*, No. 11 Civ. 3133, 2014 WL 2200393 at *3 (S.D.N.Y. May 27, 2014), report and recommendation adopted, 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *see also Pabello v. Carlton Cleaners*, No. 11 Civ. 2267, 2019 WL 4727495, at *3 (S.D.N.Y. Sept. 27, 2019). The NYLL minimum wage applicable to plaintiffs' employment was $10.50 between December 31, 2016; $12.00 per hour after December 31, 2017; and $13.50 per hour after December 31, 2018. NYLL § 652(1)(a)(ii).[7]

To determine whether an employee was compensated above the required minimum wage, a court "consider[s] the employee's average hourly wage, which is determined by dividing the total renumeration for employment in any workweek by the

---

[7] Plaintiffs' submissions do not actually state the applicable minimum wage rate at the relevant time. The Court takes judicial notice of these rates in the interest of efficiency. *See, e.g.*, *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 243 (S.D.N.Y. 2015) (taking judicial notice of minimum wage rates); *Yuquilema v. Manhattan's Hero Corp.*, No. 13 Civ. 461, 2014 WL 4207106, at *13 (S.D.N.Y. Aug. 20, 2014), report and recommendation adopted, No. 13 Civ. 461, 2014 WL 5039428 (S.D.N.Y. Sept. 30, 2014) (In FLSA action, "[a] court may also rely on its own knowledge" of applicable wage rates, reasonable attorneys' fees, and court costs).

total number of hours actually worked in that workweek for which such compensation was paid." *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 302 (S.D.N.Y. 2019) (citing *Fangrui Huang v. GW of Flushing I, Inc.*, No. 17 CV 3181, 2019 WL 145528, at *5 (E.D.N.Y. Jan. 9, 2019)).

All ten Plaintiffs allege that they worked more than 40 hours per week during their employment with Defendants, but were paid based on a set daily rate regardless of the number of hours or days that they worked; in all cases, Plaintiffs worked six days per week during their periods of employment.   Accordingly, these rates fell below the minimum wage rate.  (*See* Complaint ¶¶ 57, 66, 74, 82, 90, 98, 106; *see also* Guillen Aff. ¶12, Jimenez Aff. ¶ 4, De La Cruz Aff. ¶ 4.)

Plaintiffs' inquest submissions do not break down their payments into an hourly rate.  Rather, they each state the number of hours they recall working over a week, the time period(s) in which they worked, and the daily rate paid by the Defendants.  Put differently, Plaintiffs do not "show their work" for their inquest damage calculations.  They merely state the total sums that they believe that they are owed in their individual affidavits and again in their Proposed Findings of Fact.  Plaintiffs did submit damage calculation sheets earlier in this litigation, specifically in their March 30, 2019 submissions in support of their Motion for an Order to Show Cause.  (Affirmation of Lorena P. Duarte, Esq. In Support of Motion For Order To Show Cause, Ex. 19, Damage Calculations, Dkt. 31-19).  Because that exhibit provides a more fulsome accounting of the Plaintiffs' damages, and

because the supporting data is all included with Plaintiffs' later inquest submissions, the Court will consider the damage calculation sheets as a basis for purposes of this inquest.[8]

Plaintiffs are entitled to an award of unpaid minimum wages in accordance with the individual damage calculations performed by the Court in Section K below.

## E.   Overtime Pay

Plaintiffs allege violations of the FLSA's overtime provision, which states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). *See Lahcen v. Kiran Park Newsstand Inc.*, No. 11 Civ. 5998, 2014 WL 3887222, at *4 (S.D.N.Y. Aug. 7, 2014) (noting requirement to pay "time-and-a-half for . . . hours worked in excess of 40 each week"); *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195, 2012 WL 1669341, at *6 (S.D.N.Y. May 14, 2012) ("If an employee demonstrates that he has worked more than 40 hours per week, he is entitled to recover the overtime rate for any hours in excess of 40"). The same standard applies under the NYLL.  *Nakahata v. N.Y.-Presbyterian Healthcare System, Inc.,* 723 F.3d 192, 200 (2d Cir.2013) (citing 12 N.Y.C.R.R. § 142–2.2).

---

[8] Plaintiffs' counsels' calculation of unpaid overtime hours is less than clear. In different places within the record, there are inconsistencies in the damages being sought, particularly between the submissions of former counsel Attorney Duarte in Support of Plaintiffs Motion for Order to Show Cause, dated March 30, 2019 (Dkt. 31-32) and the submissions of new counsel Attorney Fan in support of this inquest (Dkt. 48-49.) Even within the new inquest submissions, the Court finds certain inconsistencies. As just one example, the Findings of Fact state that Plaintiff Real worked 48 hours per week in one place, but 51 hours per week in another, while their damage calculation appears to rely on the lower number. (FF ¶¶ 6, 47.) As discussed below in the section on damage calculations, the Court has performed its own calculation of hours based upon the ten Plaintiffs' affidavits and other submissions.

Each Plaintiff alleges that they worked more than 40 hours every week during their periods of employment with Defendants.  (Complaint ¶¶ 63, 64, 71, 72, 79, 80, 87, 88, 94, 95, 96, 103, 104; Guillen Aff. ¶ 3-7; Jimenez Aff. ¶ 4-7, De La Cruz Aff. ¶ 3-4.).  They support those allegations by providing their personal recollections of the weekly hours they worked.  Accordingly, each Plaintiff is entitled to be paid at one-and-a-half times their regular rate of pay for the number of hours they worked in excess of 40 hours.  The Court performs this calculation with respect to each Plaintiff in Section K below.

## F.    Liquidated Damages

Both the FLSA and the NYLL provide for liquidated damages.  Beginning with the FLSA, any employer who violates the minimum wage and overtime provisions of the FLSA is presumptively liable to the affected employees, in addition to back-pay, for 100% of the unpaid wages as liquidated damages.  29 U.S.C. § 216(b) ("Any employer who violates the provisions . . . of this title [relating to minimum wages and overtime compensation] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").

The NYLL also provides for liquidated damages.  *Garcia v. Giorgio's Brick Oven & Wine Bar*, No. 11 Civ. 4689, 2012 WL 3339220, at *4 (S.D.N.Y. Aug. 15, 2012) ("Effective April 9, 2011, Sections 198(1-a) and 663(1) of the NYLL were amended to provide for liquidated damages equal to one-hundred percent of the amounts underpaid.").  Plaintiffs may recover liquidated damages for unpaid wages under either the FLSA or NYLL, whichever provides for a greater recovery.  *Morales v. Mw Bronx, Inc.*, No. 15 Civ. 6296, 2016 WL 4084159, at *10 (S.D.N.Y. Aug. 1, 2016).  However, they are not entitled to a

double recovery of liquidated damages.  *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (per curiam) ("We therefore interpret the NYLL and FLSA as not allowing duplicative liquidated damages for the same course of conduct.").

Here, Plaintiffs all seek liquidated damages.  (*See* Complaint ¶¶ 155-157; FF ¶¶ 43-45.)  Because Plaintiffs have established that Defendants willfully violated the FLSA and NYLL, they are entitled to liquidated damages.  (*See* Conc. Law at ¶¶ 13-14.)  The amount of liquidated damages is equal to 100% of the amount owed to the Plaintiffs in unpaid wages as set forth in the Court's damage calculations in Section K below.

### G.   Wage Notices and Wage Statements

The NYLL requires employers to provide employees, at the time of hiring, with a wage notice containing basic information such as rate of pay known as a wage notice. An employee who was not provided a wage notice within ten business days of the first day of employment can recover damages of $50 for each workday that a violation occurs or continues to occur, not to exceed $5,000.  NYLL § 198(1-b).

In addition to the wage notice requirement, the NYLL also requires employers to provide employees with a wage statement with each payment of wages.  NYLL § 195(3). Each wage statement must list, *inter alia*, the dates of work covered by that payment of wages, the employer's address and phone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage.  NYLL § 195(3).   An employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000.  NYLL § 198(1–d).

Accordingly, where an employer fails to provide both wage statements and wage notices, an employee may recover a sum of not more than $10,000.  *Java v. El Aguila*

*Bar Restaurant Corp.*, No. 16 Civ. 6691, 2018 WL 1953186, at *12–13 (S.D.N.Y. April 25, 2018); *Pastor v. Alice Cleaners, Inc.*, No. 16 Civ. 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017).

Here, Plaintiffs allege that Defendants failed to provide them with both wage notices and wage statements.  (Complaint ¶¶ 60, 61, 68, 69, 76, 77, 84, 85, 92, 93, 100, 101, 108, 109, 110; FF ¶¶ 46-47.)  Plaintiffs seek penalties at the applicable statutory rate.  Accordingly, each of the ten Plaintiffs is entitled to $10,000 in statutory damages as shown in Section K below.[9]  (*See* Conc. Law at ¶ 15).

## H.    Attorneys' Fees

The FLSA and NYLL provide for an award of reasonable attorneys' fees and costs to a prevailing plaintiff in a wage-and-hour action.  29 U.S.C. § 216(b); NYLL § 198. "Courts ordinarily award a lodestar fee, which is the product of the prevailing market rate for lawyers in the district and the number of hours a reasonable attorney would spend to litigate the case effectively."  *Tackie v. Keff Enterprises LLC*, No. 14 Civ. 2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014).  An award of attorneys' fees should be based on the court's determination of a "presumptively reasonable fee."  *Sandoval v. Materia Bros. Inc.*, No. 11 Civ. 4250, 2013 WL 1767748, at *3 (S.D.N.Y. March 5, 2013) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d

---

[9] Four of the Plaintiffs – Plaintiff Cardona, Plaintiff Cabeza, Plaintiff Caguana, and Plaintiff Guillen – worked for Defendants at different junctures in time over the same 2-3 year period.  However, because the statute is clear that damages are a "maximum" of $5,000 for wage notice and wage statement violations, these individuals are not entitled to multiple recoveries of these statutory penalties each time they began a new work period with Defendants.  NYLL § 198(1-b); NYLL § 195(3).

182, 189 (2d Cir. 2008)).  This fee is calculated by multiplying "a reasonable hourly rate by the reasonable number of hours expended on the case."  *Id.*

Determining a reasonable hourly rate involves "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."  *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005).  The hourly rates must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Simmons v. New York City Transit Authority*, 575 F.3d 170, 174 (2d Cir. 2009) (same).

Here, the Southern District of New York is the relevant community.[10]  The range of fees for wage and hour cases of this type typically run between $250 and $450, with different courts endorsing slightly different ranges.  *See, e.g.*, *Shanfa Li v. Chinatown Take-Out Inc.,* No. 16 Civ. 7787 (JCM), 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) ("Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York"); *Bisono v. TDL Restoration, Inc.*, No. 17 Civ. 9431, 2019 WL 4733599, at *2 (S.D.N.Y. Sept. 27, 2019) (same); *Villar v. Prana Hospitality, Inc.*, No. 14 Civ. 8211, 2019 WL 1387412, at *10-11 (S.D.N.Y. Feb.

---

[10] In their Conclusions of Law, Plaintiffs cite almost exclusively cases from the U.S. District Court for the Eastern District of New York for comparisons of proper attorneys' fees.  (*See* Conc. Law at ¶ 17-21.)  Because the relevant community is the Southern District of New York, however, the Court relies on cases from that district.

4, 2019), report and recommendation adopted, No. 14 Civ. 8211, 2019 WL 1382803 (S.D.N.Y. March 27, 2019) (approving hourly fees of $350/hour and $450/hour for two attorneys on FLSA matter).

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same). A court should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also*, *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation.").

In support of their application for attorneys' fees, counsel for Plaintiffs provides the Affirmation of Jiajing Fan, Esq. of Hang & Associates, PLLC. (Dkt. 48.) Attorney Fan attaches to her Affidavit as Exhibit 10 the fees expended in connection with the matter, averring that these amounts were "reasonably necessary to secure the results we have achieved for our clients thus far."[11] (*Id.* at ¶ 12.) In typical matters, the firm's principal, Jian Hang, who has 10 years of employment law experience, charges $350/hour.

---

[11] Attorney Fan further notes that the matter was taken on contingency. In this District, courts will typically approve contingent attorneys' fees ranging between 30 and 33-and-1/3%. *Hernandez v. Bolu, Inc.*, No. 17 Civ. 1202, 2019 WL 294797, at *2 (S.D.N.Y. Jan. 23, 2019) (citing *Rodriguez-Hernandez v. K Bread & Co.*, No. 15 Civ. 6848, 2017 WL 2266874, at *5 (S.D.N.Y. May 23, 2017)).

The billing records submitted, however, identify the only attorney who entered time as Lorena Duarte, an associate at Han & Associates.  (*Id.* at Ex. 10.)  Attorney Duarte was counsel on this matter until she left Han & Associates in June 2019.  (Dkt. 42.)  The invoices reflect that Attorney Duarte worked on this case between October 3, 2018 and March 29, 2019, billing a total of 52.10 hours at a rate of $300/hour.

The Court has examined the time entries submitted in connection with the work performed on this matter and finds them to be fair and reasonable.  Attorney Fan's submission provides her own professional background but does not provide any similar information about Attorney Duarte.  Nevertheless, the Court finds the $300 hourly rate eminently reasonable as it falls toward the lower end of the range of fees charged for work performed on cases of this type.  Further, the Court deems the work performed as reflected in the billing records to be the nature and type that would be expected for a wage-and-hour action such as this one.  Among other tasks, Attorney Duarte spent her time communicating with her clients, drafting pleadings and affidavits, and performing the necessary damage calculations.  The Court's review of the time records did not reveal entries that appeared duplicative or unnecessary.  Accordingly, the Court recommends that Defendants pay attorneys' fees in the amount of $15,630.00.

I.      **Costs and Disbursements**

Awarding costs and disbursements is authorized by the FLSA and the NYLL.  29 U.S.C. § 216(b); NYLL § 198.  Such costs should only be awarded, however, when they are tied to "identifiable, out-of-pocket disbursements."  *Jemine v. Dennis*, 901 F. Supp. 2d 365, 394 (E.D.N.Y. 2012); *Castellanos v. Mid Bronx Community Housing Management Corp.*, No. 13 Civ. 3061, 2014 WL 2624759, at *8 (S.D.N.Y. June 10, 2014) (same);

*Angamarca v. Pita Grill 7, Inc.*, No. 11 Civ. 7777, 2012 WL 3578781, at *14 (S.D.N.Y. Aug. 2, 2012) (approving court filing fee and $600 in service of process fees for default judgment in FLSA and NYLL case); *Smith v. Nagai,* No. 10 Civ. 8237, 2012 WL 2421740, at *6 (S.D.N.Y. May 15, 2012) (noting documented costs "are fully compensable under the FLSA"), report and recommendation adopted, 2012 WL 2428929 (S.D.N.Y. June 27, 2012); *Kahlil v. Original Old Homestead Rest., Inc.,* 657 F. Supp. 2d 470, 478 (S.D.N.Y.2009) ("Fee awards include reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.") (internal quotations omitted); *Ming Hui v. Shorty's Seafood Corp.*, No. 15 CV 7295, 2017 WL 5054401, at *13 (E.D.N.Y. Sept. 6, 2017), report and recommendation adopted, No. 15 CV 7295, 2017 WL 5125527 (E.D.N.Y. Nov. 2, 2017) (describing court filing fees and service of process fees as "routinely recoverable" in wage-and-hour cases).

Plaintiffs' counsel's invoices, annexed as Exhibit 9 to counsel's affirmation, reflect costs and disbursements in the amount of $400.00 for the Court's filing fee and $484 for process server fees. Receipts for those costs and disbursements are included as Exhibit 10 to counsel's affirmation.  (*See* Conc. Law at ¶ 17; Fan Aff., Ex. 9 and 10.)  The Court finds these costs to be fair and reasonable, and accordingly recommends an award of costs and disbursements in the total amount of $884.00.

**J.    Pre-Judgment Interest**

Under the FLSA, awards of federal liquidated damages serve as a form of compensatory pre-judgment interest.  *See, e.g.*, *Cesario v. BNI Construction, Inc.*, No. 07 Civ. 8545, 2008 WL 5210209, at *6 (S.D.N.Y. Dec. 15, 2008), report and recommendation adopted, No. 07 Civ. 8545, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009) (calculating

prejudgment interest on default judgment on FLSA overtime wages); *Galeana v. Lemongrass on Broadway Corp.*, 120 F. Supp. 3d 306, 321 (S.D.N.Y. 2014).  *See also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 262 (S.D.N.Y. 2008).  For that reason, a plaintiff who receives FLSA liquidated damages may not also receive pre-judgment interest.  *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir.1988).

In contrast, liquidated damages under the NYLL are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages and pre-judgment interest.  *Yu G. Ke,* 595 F. Supp. 2d at 262 (quoting *Reilly v. NatWest Markets Group, Inc.*, 181 F.3d 253, 265 (2d Cir.1999)).  *See also Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 289653, at *7 (S.D.N.Y. Jan. 30, 2009), report and recommendation adopted sub nom, *Yao Lin v. Hayashi Ya II, Inc.*, No. 08 Civ. 6071, 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009) ("The Second Circuit has held that where a plaintiff is awarded liquidated damages under New York Labor Law, pre-judgment interest . . . is appropriate.").  Accordingly, Plaintiffs here are eligible to recover pre-judgment interest on their state law claims, the rate for which is nine percent per annum as provided by N.Y. C.P.L.R. § 5001.  *See, e.g.*, *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 594 (S.D.N.Y. 2012) (applying pre-judgment rate to NYLL claims); *Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011) (same).

Accordingly, the Clerk should enter judgment at a rate of 9% on the total damages of $332,909.04 from November 6, 2018 (the date the action was filed) through the date of entry of judgment. (*See* FF ¶ 48; Fan Aff., Ex. 9 and 10.)

**K.     Plaintiffs' Damages**

Plaintiffs are entitled to recover their unpaid wages, liquidated damages, damages for violations of wage notice requirements, attorneys' fees, costs, and pre-judgment interest.  Based on Plaintiffs' submissions and the applicable legal principles, the Court calculates the damages owed as follows:

**1.  Plaintiff Real (worked over one time period)**

| | |
|---|---|
| **Work Dates (Weeks)** | 7/1/2018 – 9/1/2018 (8 weeks) |
| **Hours Worked** | 51 |
| **Overtime Hours Worked** | 51 – 40 = 11 |
| **Weekly Salary Actually Paid** | $960.00 = $160 x 6 |
| **Hourly Rate** | $18.83 = $960/51 |
| **Overtime Rate** | $28.25 = $18.83 x 1.5 |
| **Unpaid Overtime** | ($18.83 x 40 + $28.25 x 11 – $960) x 8 = $831.60 |
| **Check Amount Bounced** | $1,500.00 |
| **Total Wage Claim** | $831.60 + $1,500.00 = $2,331.60 |
| **Liquidated Damages** | $2,331.60 x 100% |
| **Total Wage Claim with Liquidated Damages** | $4,663.20 |
| **Wage Notice Violation** | $5,000.00 |
| **Wage Statement Violation** | $5,000.00 |
| **TOTAL** | $4,663.20 + $5,000.00 + $5,000.00 = $14,663.20 |

**2.  Plaintiff Loyola (worked over one time period)**

| | |
|---|---|
| **Work Dates (Weeks)** | 6/1/2018 – 9/1/2018 (12 weeks) |
| **Hours Worked** | 46 (Average between 42.5 and 51 hours) |
| **Overtime Hours Worked** | 46 – 40 = 6 |
| **Weekly Salary Actually Paid** | $960.00 = $160 x 6 |

| Hourly Rate | $20.87 = $960/46 |
|---|---|
| Overtime Rate | $31.31 = $20.87 x 1.5 |
| Unpaid Overtime | ($20.87 x 40 + $31.31 x 6 − $960) x 12 = $751.92 |
| Check Amount Bounced | $2,000.00 |
| Total Wage Claim | $751.92 + $2,000 = $2,751.92 |
| Liquidated Damages | $2,751.92 x 100% |
| Total Wage Claim with Liquidated Damages | $5,503.84 |
| Wage Notice Violation | $5,000.00 |
| Wage Statement Violation | $5,000.00 |
| TOTAL | $5,503.84 + $5,000.00 + $5,000.00 = $15,503.84 |

### 3. Plaintiff Cardona (worked over three time periods)[12]

| Work Dates (Weeks) | 1/1/2018 − 9/1/2018 (34 weeks) |
|---|---|
| Hours Worked | 55 (Average between 51 and 59.5 hours) |
| Overtime Hours Worked | 55 − 40 = 34 |
| Weekly Salary Actually Paid | $1,320.00 = $220 x 6 |
| Hourly Rate | $24.00 = $1,320/55 |
| Overtime Rate | $36.00 = $24.00 x 1.5 |
| Unpaid Overtime | ($24.00 x 40 + $36.00 x 15 − $1,320) x 34 = $6,120.00 |
| Check Amount Bounced | $5,280.00 |
| Total Wage Claim | $6,120.00 + $5,280.00 = $11,400.00 |
| Liquidated Damages | $11,400.00 x 100% |
| Total Wage Claim with Liquidated Damages | $22,800.00 |
| Wage Notice Violation | $5,000.00 |

---

[12] Because the rate of pay was different within each of the work periods for Plaintiffs Cardona, Caguana, and Guillen, the Court calculates each period separately, and then sums the totals.

| Wage Statement Violation | $5,000.00 |
|---|---|
| TOTAL (Period 1) | $22,800.00 + $5,000.00 + $5,000.00 = $32,800.00 |

<br>

| Work Dates (Weeks) | 1/1/2017 – 1/31/2017 (4 weeks)[13] |
|---|---|
| Hours Worked | 55 |
| Overtime Hours Worked | 55 – 40 = 15 |
| Weekly Salary Actually Paid | $1,320.00 = $220 x 6 |
| Hourly Rate | $24.00 = $1,132/55 |
| Overtime Rate | $36.00 = $24.00 x 1.5 |
| Unpaid Overtime | Unpaid Overtime = (24.00 x 40 + $36.00 x 15 - $1,320) x 52 = $720.00 |
| Liquidated Damages | $720.00 x 100% |
| Total Wage Claim with Liquidated Damages | $1,440.00 |
| TOTAL (Period 2) | $1,440.00 |

<br>

| Work Dates (Weeks) | 8/1/2016 – 12/31/2016 (22 weeks) |
|---|---|
| Hours Worked | 55 |
| Overtime Hours Worked | 55 – 40 = 15 |
| Weekly Salary Actually Paid | $1,320.00 = $220 x 6 |
| Hourly Rate | $24.00 = $1320.00/55 |
| Overtime Rate | $36.00 = $24.00 x 1.5 |
| Unpaid Overtime | ($24.00 x 40 + $36.00 x 15 – $1,320) x 22 = $3,960.00 |
| Liquidated Damages | $3,960.00 x 100% |
| Total Wage Claim with Liquidated Damages | $7,920.00 |
| TOTAL (Period 3) | $7,920.00 |

---

[13] Plaintiffs' submissions incorrectly state that Plaintiff Cardona's second work period lasted for 52 weeks; the second period identified by Cardona in his affidavit is for only the first 4 weeks in January 2017. (Dkt. 31-19 at 5.) Accordingly, his Unpaid Overtime Wage Claim is significantly lower than Plaintiffs' calculations would suggest.

Cardona Total of Three Periods: $32,800.00 + $1,440.00 + $7,920.00 = $42,160.00

### 4. Plaintiff Cabeza (worked over two time periods)

| | |
|---|---|
| **Work Dates (Weeks)** | 1/1/2018 – 9/1/2018 (35 weeks) |
| **Hours Worked** | 60 (Average between 42 and 72 hours) |
| **Overtime Hours Worked** | 60 – 40 = 20 |
| **Weekly Salary Actually Paid** | $1,200.00 = $200 x 6 |
| **Hourly Rate** | $20.00 = $1,200/60 |
| **Overtime Rate** | $30.00 = $20.00 x 1.5 |
| **Unpaid Overtime** | ($20.00 x 40 + $30.00 x 20 – $1,200) x35 = $7,000.00 |
| **Check Amount Bounced** | $5,200.00 |
| **Total Wage Claim** | $7,000.00 + $5,200.00 = $12,200.00 |
| **Liquidated Damages** | $12,200.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $24,400.00 |
| **Wage Notice Violation** | $5,000.00 |
| **Wage Statement Violation** | $5,000.00 |
| **TOTAL (Period 1)** | $24,400.00 + $5,000.00 + $5,000.00 = $34,400.00 |

| | |
|---|---|
| **Work Dates (Weeks)** | 10/1/2017 – 12/31/2017 (13 weeks) |
| **Hours Worked** | 60 (Average between 42 and 72 hours) |
| **Overtime Hours Worked** | 60 – 40 = 20 |
| **Weekly Salary Actually Paid** | $1,200.00 = $200 x 6 |
| **Hourly Rate** | $20.00 = $1,200.00/60 |
| **Overtime Rate** | $30.00 = $20.00 x 1.5 |
| **Unpaid Overtime** | (20.00 x 40 + $30.00 x 15 – $1,200.00) x 13 = $3,900.00 |
| **Liquidated Damages** | $3,900.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $7,800.00 |
| **TOTAL (Period 2)** | $7,800.00 |

Cabeza Total of Two Periods: $34,400.00 + $7,800.00 = $42,200.00

### 5. Plaintiff Caguana (worked over two time periods)

| | |
|---|---|
| **Work Dates (Weeks)** | 7/1/2018 – 9/1/2018 (9 weeks) |
| **Hours Worked** | 56 (Average between 42.5 and 52.5) |
| **Overtime Hours Worked** | 56 − 40 = 16 |
| **Weekly Salary Actually Paid** | $950.00 = $190 x 5 |
| **Hourly Rate** | $17.00 = $1,320/56 |
| **Overtime Rate** | $25.50 = $17.00 x 1.5 |
| **Unpaid Overtime** | ($17.00 x 40 + $25.50 x 16 − $950.00) x 9 = $1,242.00 |
| **Check Amount Bounced** | $6,000.00 |
| **Total Wage Claim** | $1,242.00 + $6,000.00 = $7,242.00 |
| **Liquidated Damages** | $7,242.00.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $14,484.00 |
| **Wage Notice Violation** | $5,000.00 |
| **Wage Statement Violation** | $5,000.00 |
| **TOTAL (Period 1)** | $14,484.00 + $5,000.00 + $5,000.00 = $24,484.00 |

| | |
|---|---|
| **Work Dates (Weeks)** | 5/1/2018 – 6/30/2018 (9 weeks) |
| **Hours Worked** | 56 |
| **Overtime Hours Worked** | 56 − 40 = 16 |
| **Weekly Salary Actually Paid** | $900.00 = $180 x 5 |
| **Hourly Rate** | $16.00 = $1,320/56 |
| **Overtime Rate** | $24.00 = $16.00 x 1.5 |
| **Unpaid Overtime** | ($16.00 x 40 + $24.00 x 16 − $900.00) x 9 = $1,116.00 |
| **Liquidated Damages** | $1,116.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $2,323.00 |
| **TOTAL (Period 2)** | $2,323.00 |

Caguana Total of Two Periods: $24,484.00 + $2,323.00 = $26,807.00

### 6. Plaintiff Yupa (worked over one time period)

| | |
|---|---|
| **Work Dates (Weeks)** | 2/1/2018 – 7/1/2018 (22 weeks) |
| **Hours Worked** | 45 (Average between 40 and 48 hours) |
| **Overtime Hours Worked** | 45 – 40 = 5 |
| **Weekly Salary Actually Paid** | $1,080.00 = $180 x 6 |
| **Hourly Rate** | $24.00 = $1,320/55 |
| **Overtime Rate** | $36.00 = $24.00 x 1.5 |
| **Unpaid Overtime** | ($24.00 x 40 + $36.00 x 5 - $1,080) x 22 = $1,320.00 |
| **Check Amount Bounced** | $3,600.00 |
| **Total Wage Claim** | $1,320.00 + $3,600.00 = $4,920.00 |
| **Liquidated Damages** | $4,920.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $9,840.00 |
| **Wage Notice Violation** | $5,000.00 |
| **Wage Statement Violation** | $5,000.00 |
| **TOTAL** | $9,840.00 + $5,000.00 + $5,000.00 = $19,840.00 |

### 7. Plaintiff Gil (worked over one time period)

| | |
|---|---|
| **Work Dates (Weeks)** | 3/1/2018 – 8/1/2018 (22 weeks) |
| **Hours Worked** | 55 (Average between 51 and 59.5 hours) |
| **Overtime Hours Worked** | 55 – 40 = 15 |
| **Weekly Salary Actually Paid** | $1,500.00 = $250 x 6 |
| **Hourly Rate** | $29.00 = $1,500/52 |
| **Overtime Rate** | $43.50 = $29 x 1.5 |
| **Unpaid Overtime** | ($29 x 40 + $43.50 x 12 – $1,500) x 35 = $6,370.00 |
| **Check Amount Bounced** | $5,884.00 |
| **Total Wage Claim** | $6,370.00 + $5,884.00 = $12,254.00 |
| **Liquidated Damages** | $12,254.00 x 100% |

| Total Wage Claim with Liquidated Damages | $24,508.00 |
| --- | --- |
| Wage Notice Violation | $5,000.00 |
| Wage Statement Violation | $5,000.00 |
| TOTAL | $24,508.00 + $5,000.00 + $5,000.00 = $34,508.00 |

### 8. Plaintiff Guillen (worked over four time periods)[14]

| Work Dates (Weeks) | 8/1/2018 – 11/9/2018 (14 weeks) |
| --- | --- |
| Hours Worked | 57 |
| Overtime Hours Worked | 57 – 40 = 17 |
| Weekly Salary Actually Paid | $1,320.00 = $220 x 6 |
| Hourly Rate | $23.00 = $1,320/57 |
| Overtime Rate | $34.50 = $23.00 x 1.5 |
| Unpaid Overtime | ($23.00 x 40 + $34.50 x 15 – $1,320) x 14 = $1,645.00 |
| Check Amount Bounced | $12,000.00 |
| Total Wage Claim | $1,645.00 + $12,000.00 = $13,645.00 |
| Liquidated Damages | $13,645.00 x 100% |
| Total Wage Claim with Liquidated Damages | $27,290.00 |
| Wage Notice Violation | $5,000.00 |
| Wage Statement Violation | $5,000.00 |
| TOTAL (Period 1) | $27,290.00 + $5,000.00 + $5,000.00 = $37,290.00 |

| Work Dates (Weeks) | 1/1/2017 – 7/31/2018 (82 weeks) |
| --- | --- |
| Hours Worked | 57 |

---

[14] Plaintiff Guillen worked for Defendants for the longest time of the Plaintiffs and did so over four time periods. Although the periods are, in part, sequential, his pay rate differed in each period, and so the Court calculates each period separately before adding the totals together.

| | |
|---|---|
| **Overtime Hours Worked** | $57 - 40 = 17$ |
| **Weekly Salary Actually Paid** | $1,080.00 = $180 x 6 |
| **Hourly Rate** | $19.00 = $1,080/57 |
| **Overtime Rate** | $28.50 = $19.00 x 1.5 |
| **Unpaid Overtime** | (19.00 x 40 + $28.50 x 17 − $1,080) x 82 = $13,489.00 |
| **Liquidated Damages** | $13,489 x 100% |
| **Total Wage Claim with Liquidated Damages** | $26,978.00 |
| **TOTAL (Period 2)** | $26,978.00 |

| | |
|---|---|
| **Work Dates (Weeks)** | 11/1/2016-12/31/2016 (9 weeks) |
| **Hours Worked** | 55 |
| **Overtime Hours Worked** | $55 - 40 = 15$ |
| **Weekly Salary Actually Paid** | $960.00 = $160 x 6 |
| **Hourly Rate** | $18.00 = $1,320.00/55 |
| **Overtime Rate** | $27.00 = $18.00 x 1.5 |
| **Unpaid Overtime** | ($18.00 x 40 + $27.00 x 15 − $960) x 9 = $1,485.00 |
| **Liquidated Damages** | $1,485.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $2,970.00 |
| **TOTAL (Period 3)** | $2,970.00 |

| | |
|---|---|
| **Work Dates (Weeks)** | 9/1/2016 − 10/31/2016 (9 weeks) |
| **Hours Worked** | 55 |
| **Overtime Hours Worked** | $55 - 40 = 15$ |
| **Weekly Salary Actually Paid** | $810.00 = $135 x 6 |
| **Hourly Rate** | $15.00 = $810.00/55 |
| **Overtime Rate** | $22.50 = $18.00 x 1.5 |
| **Unpaid Overtime** | ($15.00 x 40 + $22.50 x 15 − $810) x 9 = $1,147.50 |
| **Liquidated Damages** | $1,147.50 x 100% |

34

| | |
|---|---|
| **Total Wage Claim with Liquidated Damages** | $2,295.00 |
| **TOTAL (Period 4)** | $2,295.00 |

Guillen Total of Four Periods: $37,290.00 + $26,978.00 + $2,970.00 + $2,295.00 = $69,533.00.

### 9. Plaintiff Jimenez (worked over one time period)

| | |
|---|---|
| **Work Dates (Weeks)** | 1/1/2018 – 9/1/2018 (35 weeks) |
| **Hours Worked** | 52 |
| **Overtime Hours Worked** | 52 – 40 = 12 |
| **Weekly Salary Actually Paid** | $1,500.00 = $250 x 6 |
| **Hourly Rate** | $29.00 = $1,500/52 |
| **Overtime Rate** | $43.50 = $29 x 1.5 |
| **Unpaid Overtime** | ($29 x 40 + $43.50 x 12 − $1,500) x 35 = $6,370.00 |
| **Check Amount Bounced** | $5,884.00 |
| **Total Wage Claim** | $6,370.00 + $5,884.00 = $12,254.00 |
| **Liquidated Damages** | $12,254.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $24,508.00 |
| **Wage Notice Violation** | $5,000.00 |
| **Wage Statement Violation** | $5,000.00 |
| **TOTAL** | $24,508.00 + $5,000.00 + $5,000.00 = $34,508.00 |

### 10. Plaintiff De La Cruz (worked over one time period)

| | |
|---|---|
| **Work Dates (Weeks)** | 8/1/2018 – 9/24/2018 (8 weeks) |
| **Hours Worked** | 48 |
| **Overtime Hours Worked** | 48 – 40 = 8 |
| **Weekly Salary Actually Paid** | $1,000.00 = $200 x 5 |
| **Hourly Rate** | $21.00 = $1,000/48 |

| | |
|---|---|
| **Overtime Rate** | $31.50 = $21.00 x 1.5 |
| **Unpaid Overtime** | ($21.00 x 40 + $31.50 x 8 – $1,000) x 8 = $736.00 |
| **Check Amount Bounced** | $2,600.00 |
| **Total Wage Claim** | $736.00 + $2,600.00 = $3,336.00 |
| **Liquidated Damages** | $3,336.00 x 100% |
| **Total Wage Claim with Liquidated Damages** | $6,672.00 |
| **Wage Notice Violation** | $5,000.00 |
| **Wage Statement Violation** | $5,000.00 |
| **Total** | $6,672.00 + $5,000.00 + $5,000.00 = $16,672.00 |

**Total Damages for Unpaid Overtime Wages, Bounced Checks, Wage Notice Violations, and Wage Statement Violations:**

| Plaintiff | Damages |
|---|---|
| Real | $14,663.20 |
| Loyola | $15,503.84 |
| Cardona | $42,160.00 |
| Cabeza | $42,200.00 |
| Caguana | $26,807.00 |
| Yupa | $19,840.00 |
| Gil | $34,508.00 |
| Guillen | $69,533.00 |
| Jimenez | $34,508.00 |
| De La Cruz | $16,672.00 |
| **TOTAL OF DAMAGES** | **$316,395.04** |
| **ATTORNEY'S FEES** | **$15,630.00** |
| **COSTS AND DISBURSEMENTS** | **$884.00** |

| | |
|---|---|
| **TOTAL AWARD (Prior to pre-judgment interest)** | **$332,909.04** |

## Conclusion

For the foregoing reasons, I recommend awarding Plaintiffs: $316,395.04 in unpaid overtime wages and statutory damages; $15,630.00 in attorneys' fees; and $884.00 in costs and disbursements; for a total sum of $332,909.04. Additionally, I recommend an award of pre-judgment interest at a rate of 9% calculated from November 6, 2018 through the date of final judgment in a sum to be calculated by the Clerk of Court.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Vernon S. Broderick, U.S.D.J., United States Courthouse, 40 Foley Square, Room 415, New York, NY 10007 and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 1960, New York, New York 10007.  **Failure to file timely objections will preclude appellate review.**

Respectfully submitted,

ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:       October 25, 2019
             New York, New York

Copies transmitted to all counsel of record and mailed to:

S.H. General Contracting, LLC
460 East 115th Street, Ste. 3R
New York, NY 10029


SH General Construction Corp.
460 East 115th Street, Ste. 3R
New York, NY 10029

SH GC Corp.
460 East 115th Street, Ste. 3R
New York, NY 10029

Samir Hoti
460 East 115th Street, Ste. 3R
New York, NY 10029